Francisca Albina Matías-Lorenzo, Plaintiff and Appellee, v. Alfredo Rafucci-Bayron, Defendant and Appellant.

No. 3361. Argued December 11, 1924.—Decided April 21, 1925.

1. Guardian and Ward—Minor—Appeal—Assignment of Errors. — The Supreme Court will not consider assignments of error referring to matters disposed of by the trial court after appeal.

2. Id.—Id.—Special Guardian—Emancipation by Marriage.—A special guardian may be appointed for a minor emancipated by marriage for the purpose of giving or refusing his consent in the cases specified by the law.

3. Id.—Id.—Id.—Id.—When a guardian is appointed at the request of a minor emancipated by marriage the appointment is not void although from its terms it may be inferred that a general guardian was appointed, for the less is included in the greater.

4. Id.—Id.—Id.—Id.—Authorization of Court.—A minor emancipated by marriage does not need authorization of court to sell his property.

5. Id.—Id.—Id.—Registry of Guardianship.—It is not necessary to enter in the registry of guardianships the appointment of a special guardian made under section 309 of the Civil Code.

District Court of Aguadilla, Tomás Bryan, J. Judgment for the plaintiff in an action to revoke appointment of guardian, etc. Reversed.

Reichard & Reichard for the appellant. García Méndez & García Méndez for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The plaintiff prays in this action that the appointment of the guardian be revoked; that the sale of the property be held void; that the said property be restored to her,

and that she be allowed $4,000 as mesne profits and the costs of the action.

The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled and the defendant was given ten days within which to answer.

After having been given notice of the ruling of the court the defendant moved for its reconsideration, but did not answer within the ten days. On the plaintiff's motion the defendant's default was entered and the case was tried *ex parte.* On February 4, 1924, the court rendered judgment for the plaintiff.

On February 12th the defendant moved for relief from the judgment and on March 8th filed notice of appeal to this court. On the 11th of March the court overruled the motion for relief from the judgment and finally the record was brought up to this court and the appeal was heard with the sole attendance of counsel for the appellee.

[1] In accordance with the appellee's request we shall not consider the errors assigned by the appellant in relation to the opening of the default. Here the appeal was from the judgment and, as we have seen, the refusal of the court to relieve the defendant from the effects of the judgment was ruled after the appeal had been taken.

The facts appearing from the allegations of the complaint and from the evidence introduced by the plaintiff are as follows:

By a public deed executed on March 4, 1902, Pedro Badillo sold a property of 31.50 acres situated in Aguada to the plaintiff minor, Francisca Albina Matías y Lorenzo, represented by her father, for the sum of $242.10 and the deed was recorded in the registry of property.

On April 23, 1915, the said Francisca Albina Matías y Lorenzo, while still a minor but emancipated by marriage,

filed in the District Court of Aguadilla a verified petition which reads in part as follows:

"That she is under 21 years of age, as shown by the birth certificate exhibited herewith from which it appears that her age is 19 years and 6 month.—2.—That she was emancipated upon marrying Anastacio Carrero, but he died on October 10th leaving her a widow and without any person who could represent her, inasmuch as her parents and grandparents are dead and she has no living brothers or sisters of age.—3.—That since the death of her husband she has encountered great difficulty and trouble in the management of her properties, because her few relatives have endeavored only to rob her, and as she has not the necessary capacity or experience, the result is that she has contracted debts for which several claims are pending against her and her property has been attached. Therefore, unless a person of capacity and with lawful authority takes charge of the matter she will soon be totally insolvent by losing what little may still be saved of her properties.—4.—That for these reasons the petitioner considers it necessary and desires, in view of the fact that she is a minor, that a guardian be appointed for her notwithstanding her emancipation, so that the said guardian may adjust her affairs and settle her pending claims, saving as much as possible of her possessions.—5.—That she owns only a property of 31.50 acres in the ward of Río Grande, Aguada, having a value of $700.— 6.—That Rafael Ferrer, a merchant, property owner and resident of this city, is a person absolutely trustworthy and wholly qualified by reason of his straightforwardness, integrity and experience to act as guardian of the petitioner, who desires that the said Ferrer be appointed as such guardian without being required to give security. —For all of this she prays the court, after all the formalities of law have been complied with, to appoint Rafael Ferrer as guardian of the petitioner Francisca Albina Matías Lorenzo without the requisite of giving bond and with such other pronouncements as may be proper."

On May 1, 1915, the court ruled on the petition as follows:

" * * * the court appoints Rafael Ferrer, a resident of this city, married, merchant and property owner, to represent the said minor, who is a widow without parents, grandparents, brothers or sisters of age who can represent her, and so that in accordance with the law he may complete her personality in all matters that the

said minor can not attend to personally, in and out of court, with all other powers necessary under the law. The said guardian shall give security in the sum of $500 and take the oath prescribed by law, and when this shall have been done the court will take such further action as may be proper."

On May 4, 1915, the guardian gave the security required by the court. It appears that on the same day a motion was filed by counsel on behalf of the petitioner and the guardian stating that the petitioner owned only the property described in the petition. After the oath had been taken by the guardian and filed the court, on May 6th, made an order which reads as follows:

"Rafael Ferrer, the guardian appointed, having given the security and taken the oath required, is given possession of his office with such powers as may be necessary under the law to enable him to represent his ward in court and out of court and in all such other matters as the said ward can not attend to according to law. Let this guardianship be recorded in the registry of guardianships in charge of the clerk of this court and the corresponding writ be issued."

The guardianship was recorded on May 11, 1915.

The deed of sale sought to be declared void was not offered in evidence, but the following appears from a certificate issued by the Registrar of Property of Aguadilla in connection with that deed:

"That by deed No. 50, of May 7, 1915, executed before notary Arturo Reichard del Valle the property described * * * was sold to Alfredo Rafuchi y Bairón, who owns it at present, for the sum of $1,000, of which the vendee retained $160 to be paid to Alfredo Blasco in order to cancel the attachment levied on the said property, as appears from entry letter 'A.'—4.—That in the said deed of sale appeared Francisca Albina Matías as a minor emancipated by marriage, together with and with the acquiescence of her guardian, Rafael Ferrer Solano, the said Francisca Albina Matías being at the time of the execution of the deed of sale in favor of Rafuchi a widow 19 years and 6 months of age, property owner and a resident of Aguadilla."

Should a guardian have been appointed? If so, was it a case of a general or of a special guardian? Was it necessary to obtain the authorization of court which the law requires for the sale of property of minors? Could the guardian act lawfully before his appointment had been recorded in the registry of guardianships? These are the questions to be considered.

[2] Section 309 of the Civil Code, as amended in 1906 (Laws of 1906, p. 37; Comp. of 1911, sec. 3379), reads as follows:

"A minor, whether male or female, becomes emancipated of right by marriage. Nevertheless, in order to alienate and mortgage any real property or to contract loans a minor emancipated by marriage shall require the consent of his father, in default of his father that of his mother, and in the proper case, that of his tutor."

Emancipation by marriage is recognized and regulated by statute. Title XI of Book I of the Civil Code treats of Emancipation and Majority. There is no Roman precedent concerning emancipation and it is also omitted from the *Partidas*. In the *Enciclopedia Jurídica Española*, volume XI, page 350, the following is said:

"According to Law 47 of Toro, emancipation by marriage was *for all purposes and all time*. Law 48 (Law 3, Title V, Book X of the *Novísima Recopilación*) provided that 'hereafter when a son or daughter has been married he or she shall have the usufruct of all of his or her properties acquired by industry, for in case the father may be living he shall be obliged to surrender it to him or her, without retaining any part of the usufruct of such properties.' But the laws of Toro did not fix the age at which a husband could manage the community property. This was determined, as a complement to the doctrine of the said laws, by a decree of Philip IV, which is Law 7, Title II, Book X of the *Novísima Recopilación*, fixing such age at 18 years, although the legal capacity of those under 25 years still remained subject to considerable limitations.

"At present, in accordance with the Civil Code, marriage produces emancipation as a matter of right and consequently a minor may control his person and property as if he were of age and man-

age the community property, unless otherwise agreed, and also such paraphernal property as the wife may have delivered to him for management by a public instrument, all subject to the foregoing restrictions   *   *   *.''

Emancipation is by its nature permanent and irrevocable. In the same volume of the work cited, at page 349, the following appears:

"As a general rule an emancipated minor never comes again under the *patria potestas,* although the cause of emancipation may have ceased to exist. Section 319 of the Civil Code, departing from the former law which subjected the minor again to the control of the father when the former committed an act of base ingratitude towards him, *shamefully disgracing him by word or deed* (Law 19, Title XVIII, 4th *Partida*), provides that 'after emancipation has been granted it can not be revoked'; and although this undoubtedly refers to voluntary emancipation, as shown by the use of the word *granted,* the rule of irrevocability reaches the two other forms of emancipation, that is, by marriage or by obtaining majority, except in case of the nullity of the marriage for reasons showing that it had not been contracted, or of its annulment by the bad faith of the contracting parties or of one of them, in which cases, according to the provision of section 69 of the code regarding the civil effects of a declaration of nullity of a marriage, the emancipation becomes ineffective for both or for the one acting in bad faith, the *patria potestas* of the father or mother applying again, if the minor has not been emancipated by becoming of age."

There is a difference between the provisions of the revised Civil Code and those of the Spanish Civil Code in matters of emancipation, but they are substantially similar on the point under consideration. The minor becomes emancipated for the control of his person and property, but in order to alienate or mortgage real property or borrow money he must have the consent of his father, or of his mother, or of his guardian, as the case may be.

By virtue of the foregoing and of Title X of the Civil Code it follows that in a case of this kind a guardian should be appointed only for the purpose of giving or refusing

his consent in the cases determined by law, the appointee being, therefore, a special guardian and not a general guardian under the statute. The legislators called him a guardian, but could have called him as well a protector or by any other name.

The object of tutorship in general, according to section 237 of the Civil Code, is ''the custody of the person and property, or of only the property, of such persons who, not subject to *patria potestas* are incapable of governing themselves.'' These incapacitated persons are specified in section 238 of the Civil Code and among them are not included emancipated persons, who are considered capable of governing themselves.

[3] Minors emancipated by marriage are authorized by section 310 of the Civil Code to appear before the district courts to represent their interests. The minor in this case did so by filing the petition inserted at the beginning of this opinion. The said petition and the orders made by the court as a result thereof show actual confusion as to whether what was petitioned for and granted was the appointment of a general guardian under Title X of the Code, or of a special guardian under Title XI, as was proper. In any event, a guardian was appointed and the appointee was the person recommended by the minor; and upon his appointment and being later put in possession of his office after he had taken the oath and given security, he was given more powers than he was called upon to exercise. The less is included in the greater, and it having been stated in the original petition and later in a motion that the only property of the minor was the property described, the petition stating also that there were debts and claims pending and that the property had been attached, showing that the intervention of a person with capacity and lawful authority was necessary in order that the minor should not be deprived of what little might be saved of her property, the

guardian appointed was authorized to give his consent to the sale of the property, a contract in which the emancipated minor who now seeks to have it declared void had personal intervention. In accordance with the law, in a case of this kind the one who really contracts is the emancipated minor, the father, mother or guardian appearing for the sole purpose of giving consent.

[4] Authorization of court is not necessary. Manresa, in volume 2 (2nd ed.), page 683, of his commentaries, says:

"Is the consent of the father, the mother or the guardian sufficient to give validity to the said acts or contracts of an emancipated minor, or is the authorization of court also necessary? Section 317 requires only the said consent and, therefore, it is in itself sufficient and neither the court's permission nor its approval is necessary to make the act or contract valid. In cases in which the code considered this requisite necessary it has expressly so provided, as may be seen from sections 164, 188, 225, 1361 and others, the cases for which provision is there made being different from the one under consideration; and inasmuch as for the latter the present section does not make that requisite necessary, there is no doubt that it is not necessary for the validity of the act or contract and that the consent of the father, mother or guardian is enough * * *.

"In support of this doctrine that authorization of court is not necessary in this class of cases, we conclude by citing the decision of the General Directorate of Registries of June 3, 1890."

[5] The only question now to be considered is that concerning the recording of the appointment in the registry of guardianships. If the purpose of this court were to impose punishment on those who directed this matter, we should not hesitate a moment in affirming the judgment. It would have been so easy to present a petition in a specific form under section 309 of the Civil Code, especially considering the language of the order of May 6th and the provisions of section 243 of the Civil Code, that it is inconceivable how the sale was made without first recording the appointment, whether or not it was necessary, as was

done a few days later. But our mission is not to punish, but to construe the law as we understand it and then apply it to the case under consideration.

After a careful study of the question we hold that the recording of the appointment of a special guardian to which section 309 of the Civil Code refers is not necessary and, therefore, that his appointment and qualification are sufficient in order that he may proceed to discharge his duties.

Section 243 of the Code, which requires the recording of the guardianship as a prerequisite for the entrance of the guardian upon the discharge of his duties, refers to a general guardianship. It is included in Title X of Book I of the Code. The legislators made no provision for such recording in Title XI in referring to guardians called upon to give or refuse their consent to emancipated persons. In his lengthy brief the appellee has cited no particular statute or decision applicable and the commentators whose works we have consulted say nothing about the matter.

Such being the case, there being no allegation of fraud and the nullity sought and obtained depending solely upon failure to make a lawful appointment of a guardian, or if such appointment was considered valid then upon the failure to record it prior to the sale; and it appearing that the appointment of the guardian was actually made and that it was not necessary to record it, the complaint and the judgment fall of their own weight and the latter must be reversed, dismissing the complaint without costs.

Mr. Justice Franco Soto dissented.

DISSENTING OPINION OF MR. JUSTICE FRANCO SOTO.

This case involves the construction of section 309 of the Civil Code as amended by the Act of March 8, 1906, p. 37 (Comp. sec. 3379).

It reads as follows:

"A minor, whether male or female, becomes emancipated of

right by marriage. Nevertheless, in order to alienate and mortgage any real property or to contract loans a minor emancipated by marriage shall require the consent of his father, in default of his father that of his mother, and in the proper case, that of his tutor.''

It is true that the Spanish Civil Code, of which, with few modifications, the revised Civil Code of 1902 is a reproduction, did not contain such provisions; but the limitation contained therein for the alienation of real property or the contracting of loans under the requirements indicated was included in the general provision of section 307 of the Civil Code (Comp. sec. 3377), which is the equivalent of section 317 of the Spanish Civil Code.

Section 307 of the revised Civil Code, as amended by the Act of March 8, 1906 (p. 36), reads as follows:

"Emancipation capacitates the minor to govern his property and person as if he were of age; but until he attains his majority the said emancipated person cannot make any promise or contract any obligation exceeding in value the amount of his income for one year. Neither can he encumber or sell his real property, without the consent of his father, or in default thereof, that of his mother, and in the proper case, that of his tutor. Neither may he appear in a suit without the appearance of the said persons."

Section 317 of the Spanish Civil Code reads as follows:

"Emancipation qualifies the minor to control his person and property, as if of age; but, until he attains his majority, the person emancipated can not borrow money nor encumber or sell real property without the consent of his or her father, and, in the absence of the latter, that of the mother, and, in the absence of both, without that of a guardian. Neither can he nor she appear in court without the attendance of said persons."

The difference introduced by the new code is that a minor emancipated by marriage may appear before the district courts to represent his interests (section 310), and that minors emancipated by other causes (section 302) can not appear as litigants unless represented by the persons named in section 307, *supra*.

It is clear from the statutes cited that in case the intervention of a guardian should be necessary it must be understood that he is not a general guardian under section 237 *et seq.* of the Civil Code, but a special guardian who must give or refuse his consent to particular acts or contracts, supplying in the former case the statutory lack of capacity of the minor, notwithstanding his emancipation by marriage, for the particular act for which such consent is expressly required.

The law does not specifically determine who shall be appointed as such special guardian, or by whom he must be appointed, for although section 76 of the Special Legal Proceedings Act of March 9, 1905 (section 1615 of the Compilation of 1911), provides that any guardian may be qualified by the court, without giving bond, to represent a minor or incapacitated person in all such cases where his intervention shall be necessary, this provision clearly refers to the appointment of an ordinary guardian, inasmuch as the same section prescribes also that the guardian shall fulfill the requirements of section 72 (Comp. sec. 1611), ''as soon as he be under the necessity of taking charge of the administration and custody of the property of his ward.'' So that in these rules governing special legal proceedings sections 307 and 309, *supra,* regarding the appointment of special guardians, were overlooked and a similar omission was made in failing to enact any rule to this effect on that point, the situation being, therefore, the same as that presented by Manresa in his Commentaries on the Spanish Civil Code, volume 2, pages 698 and 699, who, with the usual logic of the reasoning contained in his valuable work, compares the special guardian under section 317 of the Spanish Civil Code (section 307 of the revised Civil Code) with the next friend under section 165 of the Spanish Civil Code, which is equivalent to section 230 of the revised Civil Code, and in the last section mentioned he finds the solution of

the problem under the rule of construction that what is provided in a statute or code for a particular case is applicable to all analogous cases when there is no provision to the contrary.

Section 230 provides as follows:

"Whenever, in any matter, the father or mother have interests opposed to those of their unemancipated children, the district court shall appoint for the latter a person to defend their interests, who shall represent them in or out of court.

"The district court, on petition of the father or mother, the minor himself, the public attorney or any other person capable of appearing in a suit, shall appoint, as the person to defend the interests of the said unemancipated child, the relative who, in a proper case, would act as his tutor by effect of the law, and, in his default, to [sic] another relative or any other person."

This section indicates that the district court is vested with authority to appoint the guardian and that the appointee must be the minor's relative who, in a proper case, would be the lawful guardian, and if none, any other relative or a stranger.

In commenting on the Spanish Law of Civil Procedure, volume 6, pages 307 and 308, Manresa says that the appointment is understood to be "the act by which the judge confers upon the lawfully appointed guardian the necessary powers for representing the minor or incapacitated person in accordance with law.  *  *  *  This is equivalent to the power conferred upon every mandatary and is set out in a writing signed by the judge and the clerk and of which a certified copy is given to the guardian to show his representative capacity."

However, it can not be said that there is any substantial difference in the proceeding. Now the order of the judge substitutes the *apud acta* referred to in section 1867 of the Spanish Law of Civil Procedure.

And this order is what we must consider in determining

whether the powers conferred upon the guardian are in harmony with the law.

We hold that in this case they are not. The petition of the minor asking for the appointment of a guardian refers to none of the acts or contracts specified in section 309 of the Civil Code. On the contrary, in the petition the minor makes the essential allegation (No. 4) that she desires "that a guardian be appointed for her notwithstanding her emancipation, so that the said guardian may adjust her affairs and settle her pending claims, saving as much as possible of her possessions." It is clear that the object of the petition of the minor, notwithstanding her emancipation by marriage, was that a guardian be appointed for acts of pure administration which she *de jure* was empowered to perform. The district judge should not have ignored the law, but as he did so in making the order hereinafter inserted, he acted without jurisdiction. The order reads as follows:

" * * * the court appoints Rafael Ferrer, a resident of this city, married, merchant and property owner, to represent the said minor, who is a widow without parents, grandparents, brothers or sisters of age who can represent her, and so that in accordance with the law he may complete her personality in all matters that the said minor can not attend to personally, in and out of court, with all other powers necessary under the law. The said guardian shall give security in the sum of $500 and take the oath prescribed by law, and when this shall have been done the court will take such further action as may be proper."

It is perfectly clear that the order does not authorize any act or contract specified in section 309 of the Civil Code. It was necessary to specify in the order the contract which it authorized or to indicate it expressly in order that the guardian could give or refuse his consent. However, the only object of the order of the court was rather the appointment of a guardian or tutor to represent the minor in court, which was not necessary under section

310 of the Civil Code. The best indication that it was the idea of the court to appoint an ordinary guardian empowered to perform only acts of administration is that the order required the guardian to give security in the sum of $500, which was also unnecessary if the intention was to empower the guardian to give his consent to the contract of purchase and sale, because, as Manresa says with sound logic (vol. 2, page 699), the guardian "is not called upon to manage any property or to receive the price of the sale, but only to give his consent to the act if he considers it of utility or necessity for the minor."

And it can not be maintained that an order of a court in general terms includes special acts which the law prohibits unless certain requirements are fulfilled. If the theory of agency is applicable, as indicated by Manresa in whose view we concur, in good legal hermeneutics it can not be concluded that a specific thing is included in a general one on the principle that the less is included in the greater, for it is well known that a mandate in general terms includes no more than acts of administration. In order to compromise, alienate or mortgage property, or execute any other act of strict ownership express power is necessary. Section 1615 of the Civil Code.

Section 309 of the Civil Code, furthermore, is prohibitive and should be construed strictly. The broad and liberal construction put upon it by the majority is, in my opinion, erroneous and the view taken by the court below seems to me correct and should have been sustained on appeal.